1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **CENTRAL DISTRICT OF CALIFORNIA**

9

10

NANCY FLORES,                          ) No. EDCV 17-0251-AS
11                                      )
                    Plaintiff,          ) **MEMORANDUM OPINION**
12          v.                          )
                                        )
13 NANCY A. BERRYHILL,                  )
   Acting Commissioner of Social        )
14 Security,                            )
                                        )
15                                      )
                    Defendant.          )
16 _____     )

17

18                          **PROCEEDINGS**

19

20      On February 10, 2017, Plaintiff filed a Complaint seeking review

21 of the denial of her applications for Social Security benefits.

22 (Docket Entry No. 1).  The parties have consented to proceed before

23 the undersigned United States Magistrate Judge.  (Docket Entry Nos.

24 11-12).  On July 17, 2017, Defendant filed an Answer along with the

25 Administrative Record ("AR").    (Docket Entry Nos. 15-16).      On

26 December 6, 2017, the parties filed a Joint Stipulation ("Joint

27

28

                                  1

Stip."), setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 22).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 16, 2012, Plaintiff, formerly employed as a caregiver and warehouse worker (AR 247), filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging an inability to work since October 1, 2012.[1] (AR 210, 214).

On November 19, 2014, Administrative Law Judge ("ALJ") Troy Silva examined the record and heard testimony from vocational expert ("VE") Troy Scott and Plaintiff, who was represented by counsel. (See AR 44-76). At the hearing, Plaintiff amended her disability onset date to January 1, 2014. (AR 54). On January 27, 2015, the ALJ issued a decision denying Plaintiff's applications. (See AR 26-39).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged amended onset date of January 1, 2014. (AR 29). At step two, the ALJ found

---

[1] Plaintiff previously applied for Social Security benefits in 2005, and her application was denied in a decision issued on August 1, 2007. (AR 81-89).

that Plaintiff has the following severe impairments: headaches, asthma, cervical myofascial pain disorder, low back pain syndrome, and left shoulder pain. (AR 29).  At step three, the ALJ found that Plaintiff's impairments did not met or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 30).  Before proceeding to step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[2] to perform medium work with the following limitations:

> [Plaintiff] can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk for six hours out of an eight-hour workday, and she can sit for six hours out of an eight-hour workday. She cannot work in a cold environment or an environment with pulmonary irritants.

(Id.).  At step four, the ALJ adopted the VE's testimony in finding that Plaintiff was capable of performing her past relevant work as a home health aide (Dictionary of Occupational Titles ("DOT") 354.377-014), both as she performed it and as the job is generally performed. (AR 38). As a result of these findings, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (AR 39).

---

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 19). The request was denied on December 14, 2016 (AR 1-5). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review it. See 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ failed to (1) properly rely on the VE's testimony and (2) make an RFC finding that is supported by substantial evidence. (See Joint Stip. at 4-26).

4

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

**A.   The ALJ Properly Relied on the VE's Testimony To Find That Plaintiff Could Perform Her Past Relevant Work**

Plaintiff contends that the ALJ improperly relied on the VE's testimony because the ALJ failed to reconcile a conflict between Plaintiff's RFC and the DOT description of the home health aide occupation. (Joint Stip. at 4-6, 8-10).

The ALJ relies on the DOT and VE testimony in considering potential occupations that a claimant can perform. 20 C.F.R. § 416.966(e); Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015). "When there is an apparent conflict between the [VE's] testimony and the DOT — for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear to be more than the claimant can handle — the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007)); see also SSR 00-4p (stating that adjudicators must "[i]dentify and obtain a reasonable

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

explanation for any conflicts between occupational evidence provided by VEs ... and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)"). An ALJ's failure to inquire into an apparent conflict is harmless where there is no actual conflict between the RFC and the DOT. <u>Ranstrom v. Colvin</u>, 622 F. App'x 687, 689 (9th Cir. 2015) (<u>citing</u> <u>Massachi</u>, 486 F.3d at 1154 n. 19).

Here, Plaintiff claims that the ALJ's RFC determination that Plaintiff cannot work in a cold environment or an environment with pulmonary irritants conflicts with the DOT's statement that the home health aide occupation involves occasional "exposure to weather" and occasional "wet[ness] and/or humid[ity]." DOT 354.377-014. Plaintiff points out that the SCO defines "exposure to weather" as "[e]xposure to outside atmospheric conditions." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (U.S. Dept. of Labor 1993). "Atmospheric conditions" is separately defined as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." <u>Id.</u> Therefore, Plaintiff contends that the FOT's reference to "exposure to weather" implies exposure to pulmonary irritants which conflict with her asthma and the RFC limitation that she must avoid pulmonary irritants. (Joint Stip. at 4-6, 8-10). The Court disagrees.

Contrary to Plaintiff's contentions, the ALJ's RFC finding did not limit Plaintiff's exposure to weather or to wetness and/or

humidity; it found that Plaintiff must avoid "a cold environment or an environment with pulmonary irritants." (AR 30). The hypothetical person the ALJ described to the VE was one who "should avoid concentrated exposure to pulmonary or respiratory irritants," and who "would need to avoid concentrated exposure to extreme cold or heat." (AR 72). Based on these limitations, along with others, the VE testified that Plaintiff would be able to perform the job of home health aide as it is generally performed and as Plaintiff actually performed it. (Id.). When asked if the VE's testimony was consistent with the DOT, the VE replied that it was. (AR 73).

There is nothing in the DOT description of the occupation of home health aide occupation (also called a "home attendant") to suggest that the job, as generally performed, involves exposure to cold or to pulmonary irritants. According to the DOT, a home health aide is one who "[c]ares for elderly, convalescent, or handicapped persons in patient's home," performing such tasks as changing bed linens, washing laundry, preparing food, and helping to dress and bathe the patient. DOT 354.377-014. The job also involves "[a]ccompan[ying] ambulatory patients outside home, serving as guide, companion, and aide," as well as "miscellaneous duties as requested, such as obtaining household supplies and running errands." Id.

Although the DOT states that the job of home health aide involves occasional "exposure to weather," (id.), that does not mean the job involves exposure to pulmonary irritants, such as dust or fumes, that would not normally be implied by the term "weather." The DOT uses a different categorical term, "atmospheric conditions," to

7

refer to exposure to dust, fumes and other breathable irritants,[4] (see SCO, Appendix D), and specifically states that "atmospheric conditions" are "not present" in the job of a home health aide. DOT 354.377-014. Moreover, a common sense reading of the DOT description suggests that the "exposure to weather" merely occurs in the normal course of being outdoors when "[a]ccompan[ying] ambulatory patients outside [the] home" or when running errands, as needed.

Plaintiff also contends that the home health aide job conflicts with her asthma because it involves "wetness and/or humidity," (Joint Stip. at 9-10), claiming that "wetness and/or humidity" is a pulmonary irritant because it "could affect [Plaintiff] due to her asthma," (id. at 10), and noting that asthma's "triggers" include "bad weather, such as thunderstorms or high humidity." (Id. at 10 n.2 (quoting https://www.cdc.gov/asthma/ triggers.html)). However, there is nothing in the DOT's description of the home health aide occupation to suggest that a home health aide's exposure to wetness and/or humidity would rise to the level of pulmonary irritation.[5] Accordingly, the VE accurately testified that his testimony was

_____

[4] The SCO defines the categorical term "atmospheric conditions" as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." SCO, Appendix D. Contrary to Plaintiff's argument, it is clear from the DOT and SCO that "atmospheric conditions" and "exposure to weather" are meant as distinct categories, despite the fact that the latter term is defined as "exposure to outside atmospheric conditions." Id.

[5] As used in the DOT, the term "wet and/or humid" is defined as "[c]ontact with water or other liquids or exposure to nonweather-related humid conditions." SCO, Appendix D. This category, therefore, does not include "bad weather, such as thunderstorms."

consistent with the DOT, and the ALJ did not materially err in relying on that testimony.

Finally, there is no indication in the record that Plaintiff's own past employment as a home health aide exposed her to pulmonary irritants or otherwise troubled her asthma condition. Plaintiff testified that her job involved changing diapers, washing and feeding people who were unable to care for themselves due to strokes or other conditions. (AR 50). The only difficulty that Plaintiff noted about her job was the lifting it required. (AR 51). Because the ALJ found Plaintiff capable of working as a home health aide both as generally and actually performed, the apparent lack of pulmonary irritants in Plaintiff's past relevant work supports the ALJ's finding.

**B.    The ALJ's RFC Finding Is Supported by Substantial Evidence**

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because Plaintiff "cannot lift/carry items weighing 25 to 50 pounds while using a cane and with limited upper left extremity mobility." (Joint Stip. at 11). Plaintiff also contends that the ALJ erred in rejecting the opinion of Dr. Azizollah Karamlou, the consultative examiner, who determined that, "[a]t most, [she] can perform light work." (Id. at 11-13). Plaintiff claims that if she were found capable of only light work, she would "grid[] out under grid rule 202.09" due to her illiteracy.[6] (Id.) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, 202.09).

_____

[6]    The ALJ did not believe Plaintiff's assertions of illiteracy. See AR 37. Given the Court's finding that the ALJ

9

An RFC assessment is not a medical opinion. Rather, it is an "administrative finding" the ALJ reaches after considering all the relevant evidence, including diagnoses, treatment, observations by treating physicians, medical records, and the claimant's own subjective symptoms. See Social Security Ruling 96-5p; 20 C.F.R. § 404.1527 (e)(2) (a residual functional capacity finding is not a medical opinion but an administrative finding that is reserved to the Commissioner).

When assessing doctors' medical opinions, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v.

properly rejected Dr. Karamlou's opinion regarding Plaintiff's limitation to light work, the Court does not address Plaintiff's claims regarding her illiteracy.

Colvin, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

As set forth above, the ALJ found that Plaintiff had the RFC to perform medium work with certain limitations. (AR 30). In arriving at this RFC finding, the ALJ reviewed and considered the physical, musculoskeletal and neurological examinations conducted by Dr. Karamlou on April 23, 2013, (AR 32; 377-81), incorporating some of Dr. Karamolou's findings and rejecting others that lacked support in the record.

Dr. Karamlou found that Plaintiff has "the following problems": History of trauma to the chest along with the motor vehicle accident. She was hit by machinery and she has had continuous headache. She also has breathing problem as a result of the injury to the left lung. She currently has low back pain syndrome with sciatica of the left leg. [She] walks with a cane for long distance support. (AR 380). Dr. Karamlou opined that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, walk, stand and sit for six hours in an eight-hour day; push and pull occasionally; and can climb, balance, kneel and crawl frequently. (Id.). Dr. Karamlou observed that Plaintiff "walks with a cane just for long distance support," but found that she does not need a cane or other assistive device to walk, and she can "walk on uneven terrain, climb ladders, and work at heights." (AR 379, 381). Dr. Karamlou opined that Plaintiff "should avoid extremes in temperature, dust and chemicals due to injury to the lung." (AR 381).

The ALJ rejected Dr. Karamlou's opinion regarding Plaintiff's ability to lift and carry twenty pounds occasionally and ten pounds frequently, finding no support in the medical record for this opinion. "The medical evidence of record does not show a worsening of the claimant's impairments since the prior decision other than the internal medicine consultative examiner indicating a light residual functional capacity, but this assessment does not seem supported by the objective evidence." (AR 32, 37).[7] "I am using a medium residual functional capacity given in the last decision due to the lack of objective findings showing a worsening of the claimant's condition." (AR 37).

The record supports the ALJ's finding. Medical records dated February 12 and 17, 2014, reveal that although Plaintiff complained of left shoulder pain, examination revealed a normal range of motion and normal strength. (AR 33, 412, 430). Records of examinations on March 6 and 18, 2014, also showed normal range of motion and normal motor strength despite Plaintiff's complaints of ongoing shoulder pain. (AR 33, 473, 515). A June 11, 2014, emergency room visit for abdominal pain, for which Plaintiff was treated and released, also confirmed normal range of motion in the neck. (AR 33, 529). On October 11, 2014, Plaintiff was treated for pneumonia but a physical examination was completely normal. (AR 33, 1392). Records from an emergency room visit on October 28, 2014 indicate that Plaintiff

---

[7] As noted, Plaintiff had previously filed an application for Social Security Income in 2005, which was denied on August 1, 2007. (AR 81-89).

12

complained of low back pain, appeared to be in mild to moderate pain, and was advised to apply ice and cold packs for three days. The attending physician did not believe that lumber spine x-rays were necessary. (AR 34, 1437). The ALJ also noted that a review of the medical records submitted after the hearing date did not support Plaintiff's complaints of back, neck and shoulder pain to the extent alleged at the hearing. (AR 37). An examination on November 22, 2014 revealed 5/5 strength in upper and lower extremities. (AR 1459).

The ALJ also declined to adopt Dr. Karamlou's opinion that Plaintiff can push and pull occasionally and can climb, balance, kneel and crawl frequently, (AR 380), finding that Dr. Karamlou's own assessment did not support the greater limitations in lifting, pushing and pulling. For example, upon examining Plaintiff, Dr. Karamlou found that Plaintiff's muscle strength was "in the range of 5/5 and 5/5," and her range of motion in the shoulders, elbows, and wrists was "grossly within normal limits bilaterally." (AR 379-80). Dr. Karamlou also found that Plaintiff could grip forty-five pounds with her right hand and forty pounds with her left, that her grip strength was "5/5 bilaterally," and that joint flexion in Plaintiff's hands was grossly within normal limits (AR 380).

The ALJ's RFC finding incorporated Dr. Karamlou's opinion that Plaintiff can walk, stand and sit for six hours in an eight-hour day, and that she does not need an assistive device for walking. (AR 30, 380-81). Moreover, by finding that Plaintiff "cannot work in a cold environment or an environment with pulmonary irritants," (AR 30), the ALJ also incorporated Dr. Karamlou's opinion that Plaintiff "should

13

avoid extremes in temperature, dust and chemicals due to injury to the lung." (AR 381).

The ALJ noted that when questioned about the use of an assistive device, plaintiff stated that she used [it] primarily because she is under 5' in height[], and she uses it to prop her feet when using the toilet or to retrieve items that are too high for her to reach. (AR 32, 66, 296). This was consistent with Dr. Karamlou's opinion that Plaintiff did not need the cane or other assistive device to walk and supported by medical examinations which generally show a normal gait without assistance. (E.g., AR 491, 529). Plaintiff does not point to any medical opinion or other evidence in the record to show that she needs a cane to walk.

The ALJ's RFC finding was consistent with the opinions of the state agency non-examining physicians, (see AR 117, 138), who found that Plaintiff was limited "to medium exertion with preclusions from concentrated exposure to fumes, odors, dust, gases and poor ventilation." (AR 38). The ALJ gave "great weight" to these opinions finding them to be "consistent with the overall evidence." (AR 38).

The ALJ's decision to reject Dr. Karamlou's opinion regarding Plaintiff's ability to lift and carry twenty pounds occasionally and ten pounds frequently and limitations of Plaintiff's ability to push and pull, climb, balance, kneel and crawl in determining Plaintiff's RFC is supported by substantial evidence in the record.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: December 28, 2017


                                        /s/
                                    ──────────────────────────
                                    ALKA SAGAR
                                    UNITED STATES MAGISTRATE JUDGE